# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE FARADAY FUTURE INTELLIGENT ELECTRIC INC. STOCKHOLDER LITIGATION | CONSOLIDATED C.A. No. 2022-0845-LWW |

## MEMORANDUM OPINION

Date Submitted: November 6, 2024
Date Decided: February 10, 2025

Michael Hanrahan, Corinne Elise Amato, Kevin H. Davenport, Eric J. Juray & Seth T. Ford, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; *Counsel for Lead Plaintiff William Howard Cleveland*

P. Bradford deLeeuw, DELEEUW LAW LLC, Wilmington, Delaware; *Executive Committee of Additional Counsel for Plaintiff Jason Bin Yun*

Douglas D. Herrmann & Emily L. Wheatley, TROUTMAN PEPPER LOCKE LLP, Wilmington Delaware; Alan Kessel, TROUTMAN PEPPER LOCKE LLP, Los Angeles, California; Jay A. Dubow & Erica Hall Dressler, TROUTMAN PEPPER LOCKE LLP, Philadelphia, Pennsylvania; Mary Weeks, TROUTMAN PEPPER LOCKE LLP, Atlanta, Georgia; *Counsel for Defendant Faraday Future Intelligent Electric Inc., f/k/a Property Solutions Acquisition Corp.*

Ronald N. Brown, Kelly L. Freund & Daniel P. Klusman, DLA PIPER LLP (US), Wilmington, Delaware; *Counsel for Defendant FF Top Holding LLC*

Raymond J. DiCamillo & Kevin M. Gallagher, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Counsel for Defendants Property Solutions Acquisition Sponsor, LLC, Jordan Vogel, Aaron Feldman, Eduardo Abush, & David Amsterdam*

Steven C. Norman, Jaclyn C. Levy & Emma K. Diver, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; David B. Hennes & Martin J. Crisp, ROPES & GRAY LLP, New York, New York; J. William Piereson, ROPES & GRAY LLP, Boston, Massachusetts; *Counsel for Defendant Deutsche Bank Securities, Inc.*

David E. Ross, S. Michael Sirkin & Roger S. Stronach, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; *Counsel for Defendant Latham & Watkins LLP*

Elena C. Norma, Richard J. Thomas, Paul J. Loughman & Daniel M. Kirshenbaum, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; *Counsel for Defendant Riverside Management Group, LLC*.

**WILL, Vice Chancellor**

This case concerns a 2021 de-SPAC transaction. Stockholder Howard Cleveland asserts that the SPAC's sponsor and directors breached their fiduciary duties, with the assistance of various aiders and abettors, by impairing public stockholders' redemption rights. He also alleges that the transaction violated the SPAC's certificate of incorporation.

Nine months before Cleveland filed this action, another stockholder filed securities law claims against the combined company and certain of its officers in California federal court. The California action implicated the same transaction and disclosures at issue here. The class of stockholders represented in California subsumes the putative class in this action.

The California action settled. The stockholder class obtained $7.5 million in exchange for a release of claims. After the federal court preliminarily approved the settlement, Cleveland opposed final approval, arguing that the release was overbroad and implicated his suit in Delaware. The federal judge approved the settlement over Cleveland's objection.

Now, the defendants in this suit seek summary judgment. They argue both that Cleveland's claims were released by the California settlement and that res judicata precludes further litigation. Because the first ground is conclusive, I need not reach the second. The California release unambiguously sweeps in this suit. Summary judgment is granted in the defendants' favor.

## I.  RELEVANT BACKGROUND

Unless otherwise noted, the background that follows is based on the Verified Class Action Complaint (the "Complaint"), documents integral to the Complaint or incorporated by reference, and exhibits submitted with defendants' motion for summary judgment.[1]

### A.  Property Solutions Acquisition Corp.

Property Solutions Acquisition Corp. was incorporated in Delaware in February 2020.  It was formed as a special purpose acquisition company (SPAC) for the purpose of combining with a private company target in a de-SPAC transaction.[2] Its initial public offering was held five months later in July 2020, and the proceeds were placed into a trust account.[3]

---

[1] Verified Class Action Compl. (Dkt. 1) ("Compl.").

Exhibits to the Transmittal Affidavit of Emily L. Wheatley in Support of Defendants' Motion for Summary Judgment (Dkt. 125) are cited as "Defs.' Ex. __." Exhibits to the Affidavit of Seth T. Ford in Support of Plaintiff's Answering Brief in Opposition to Defendants' Motion for Summary Judgment and Motion to Stay (Dkt. 134) are cited as "Pl.'s Ex. __."

[2] Compl. ¶ 41; Dkt. 53 Ex. C (Property Solutions Acquisition Corp., Prospectus (dated July 21, 2020) ("Prospectus")) 1.  The Prospectus is incorporated by reference in the Complaint. *E.g.*, Compl. ¶ 12; *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]") (citation omitted).

[3] Compl. ¶¶ 45-46; Prospectus 5.

Property Solutions adopted an amended and restated certificate of incorporation at the time of its IPO.[4] "Article Sixth" of the amended certificate governed common stockholder rights, including the right to redeem shares before a business combination closed.[5] Article Sixth C stated that "[i]n the event that a Business Combination is approved . . . and is consummated by the Corporation, any holder of shares of Common Stock sold in the IPO (the "IPO Shares") may demand that the Corporation convert his IPO Shares into cash . . . ."[6]

### B.     The Business Combination

After its IPO, Property Solutions searched for a business combination target. In the fall of 2020, it explored a potential transaction with FF Intelligent Mobility Global Holdings, Ltd. ("Legacy Faraday"), a private startup electric vehicle manufacturer.[7] Property Solutions was advised by Riverside Management Group, LLC, Deutsche Bank Securities Inc., and Latham & Watkins LLP.[8] Discussions culminated in a proposed business combination valued at $2.706 billion.[9] Property

---

[4] Compl. ¶ 126.

[5] *See id.* ¶¶ 51-64.

[6] *Id.* ¶ 51.

[7] Dkt. 53, Ex. B (Proxy Statement for Special Meeting of Stockholders of Property Solutions Acquisition Corp. (filed June 24, 2021) ("Proxy")) 9.  The Proxy is incorporated by reference into the Complaint.  *E.g.*, Compl. ¶ 5.

[8] Compl. ¶¶ 18-20; Proxy 82.

[9] Proxy 83; *see* Compl. ¶ 81.

Solutions' board of directors approved a merger agreement, which was announced on January 28, 2021.[10]

Property Solutions filed a final proxy statement on June 24, 2021.[11] The proxy informed stockholders that a vote on the merger would occur during a July 20, 2021 special meeting. It also explained how public stockholders could exercise their redemption rights.[12]

After stockholder approval, the de-SPAC merger closed on July 21, 2021.[13] Unredeemed shares of Property Solutions stock were automatically "converted" into shares of Class A common stock in the combined company, which was renamed Faraday Future Intelligent Electric, Inc. ("Faraday").[14] The company's stock trades on NASDAQ.[15]

## C. The *Zhou* Action

In December 2021, five months after the de-SPAC transaction closed, a Property Solutions stockholder filed a class action complaint in the United States

---

[10] Compl. ¶ 244.

[11] *Id.* ¶ 5.

[12] Proxy, Notice & Q&A 4.

[13] *See* Dkt. 53, Ex. D (Excerpt, Property Solutions Acquisition Corp. Form 8-K (filed July 21, 2021) ("July 21 8-K")) 1. The July 21 8-K is incorporated by reference into the Complaint. *See* Compl. ¶ 78 n.63.

[14] July 21 8-K at 1.

[15] *Id.*

District Court for the Central District of California (the "*Zhou* Action").[16] Several near-identical complaints were filed in the same court and consolidated before the same judge. The federal court appointed lead plaintiffs and co-lead class counsel, who filed an amended complaint on May 6, 2022.[17] Faraday and certain officers and directors were named as defendants.

The federal complaint advanced six securities law claims based on purported misleading statements in the proxy, the announcement of the merger, and certain post-merger public filings. The core theory was that Property Solutions' disclosures misrepresented the value of Faraday.[18]

The federal plaintiffs alleged securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934. The Section 10(b) claim was brought on behalf of a class of public stockholders who bought stock after each of the challenged disclosures and incurred damages when the "truth was revealed" in April 2022.[19]

The federal complaint also included a claim under Section 14(a) of the Exchange Act. That claim concerned alleged material omissions in the proxy that impaired public stockholders' ability to exercise their redemption rights and vote on

[16] *Jian Zhou v. Faraday Future Intelligent Elec. Inc., et al.*, C.A. No. 21-09914-CAS-JC (C.D. Cal.) ("*Zhou* Action").

[17] Defs.' Ex. B (Am. Class Action Compl. for Violations of the Fed. Securities Laws, *Zhou* Action, ECF No. 42) ("*Zhou* Compl.").

[18] *E.g.*, *id.* ¶¶ 4, 85, 117, 154-55.

[19] *Id.* ¶ 331.

the merger.[20] It was brought on behalf of a differently defined stockholder class: those who "beneficially owned and/or held" publicly traded Property Solutions stock and were entitled to redeem their shares and vote on the business combination.[21]

The defendants moved to dismiss the *Zhou* Action. The Section 14(a) claim survived the motion and a motion for reconsideration.[22] Discovery ensued.

### D. The Delaware Action

Weeks after the amended federal complaint was filed, another Faraday stockholder filed a putative class action in this court on June 14, 2022.[23] It was followed by a second suit brought by William Cleveland on September 21.[24] On January 5, 2023, I consolidated these actions, appointed Cleveland lead plaintiff, and designated his Complaint as the operative pleading.[25]

Cleveland's Complaint names three defendants also named in the *Zhou* Action: Property Solutions (now Faraday), Jordan Vogel, and Aaron Feldman. It also names various parties who were not, including Property Solutions' legal and

---

[20] *Id.* ¶ 215.

[21] *Id.* ¶¶ 197-98, 207-16.

[22] *Zhou* Action, ECF No. 64.

[23] Compl., *Jason Bin Yun v. Faraday Future Intelligent Elec. Inc. f/k/a Prop. Sols. Acqs. Corp.*, C.A. No. 2022-0510-LWW (Del. Ch. June 14, 2022).

[24] Dkt. 1.

[25] Dkt. 35.

financial advisors.[26] Cleveland purports to represent former Property Solutions public stockholders entitled to vote on the merger and demand redemption of their shares.[27]

Cleveland's claims center on the business combination, purported impairment of public stockholders' redemption rights, and alleged disclosure deficiencies. As in the *Zhou* Action, one of his theories is that the proxy "deceived" Property Solutions' stockholders about "the valuation of [Legacy Faraday]."[28]

Count I is a breach of contract claim against the SPAC's sponsor and the individual defendants. Cleveland alleges that these defendants violated Article Sixth of Property Solutions' certificate of incorporation by failing to determine the fair market value of Legacy Faraday and issuing "improper and confusing" proxy instructions on how to exercise redemption rights.[29]

Count II is a breach of fiduciary duty claim against the sponsor and the individual defendants for approving the merger while allegedly flouting Article

---

[26] The defendants named in this action and not in the *Zhou* Action are Property Solutions Acquisition Sponsor, LLC; advisors Riverside, Deutsche Bank, and Latham & Watkins; FF Top Holding LLC, Faraday's largest stockholder following the merger; and three independent directors of Property Solutions who were dismissed from the *Zhou* Action— David Amsterdam, Avi Savar, and Eduardo Abush.

[27] Compl. ¶ 263.

[28] *Id.* ¶ 5.

[29] *Id.* ¶¶ 4, 273.

7

Sixth, making misleading and incomplete disclosures in the proxy, and relying on financial and legal advisors with undisclosed conflicts.[30]

Counts III, IV, V, and VI are aiding and abetting and civil conspiracy claims against Riverside, Deutsche Bank, Latham and stockholder FF Top Holding LLC for facilitating breaches of fiduciary duty that purportedly resulted in materially deficient proxy disclosures.[31]

On April 7, 2023, the defendants filed their respective motions to dismiss the Complaint.[32]  Cleveland filed an omnibus answering brief on September 19,[33] and the defendants filed reply briefs on December 11.[34]  At the parties' request, the motion to dismiss hearing was adjourned so that it could be concurrently heard with the defendants' motion for summary judgment.[35]

### E.  The *Zhou* Settlement and Cleveland's Objection

The parties in the *Zhou* Action and in this action engaged in separate mediations, each with JAMS' Jed Melnick, during the summer of 2023.  At first, neither mediation yielded a settlement.  But the parties in the *Zhou* Action continued

---

[30] *Id.* ¶¶ 283-90.

[31] *Id.* ¶¶ 291-329.

[32] Dkts. 46, 47, 48, 50, 51, 52.

[33] Dkt. 74.

[34] Dkts. 91, 92, 93, 94, 95.

[35] Dkt. 120.

settlement discussions and eventually accepted a mediator's proposal to settle for $7.5 million.[36]

A motion for preliminary approval was filed in October, along with a stipulation of settlement (the "*Zhou* Stipulation").[37] On November 7, the federal court preliminarily approved the settlement and form of notice to the settlement class; set deadlines for class claims, objections, opt-outs, and post-settlement motions; and scheduled a final approval hearing for March 18, 2024.[38]

Three days later, Cleveland's counsel wrote to the parties in the *Zhou* Action. Cleveland's counsel expressed "concern[] that the release language in the [*Zhou* Stipulation] . . . could be interpreted as releasing the claims asserted in the Delaware Action."[39] Quoting from the definitions of "Released Plaintiffs' Claims," "Released Defendants Parties," and "Settlement Class" in the *Zhou* Stipulation, Cleveland's counsel identified the grounds for his concerns:

> Based on the foregoing definitions,
>
> 1. William Howard Cleveland, the Lead Plaintiff in the Delaware Action, is a member of the Settlement Class;
>
> 2. [A]ll of the Defendants in the Delaware Action . . . are Released Defendant Parties; and

---

[36] *Zhou* Action, ECF Nos. 100, 103.

[37] Defs.' Ex. D (Stip. of Settlement, *Zhou* Action, ECF No. 104-1) ("*Zhou* Stip.").

[38] *Zhou* Action, ECF No. 109.

[39] Defs.' Ex. C (Joint Stip. Pursuant to L.R. 37-1 Regarding Class Member William Howard Cleveland's Mot. to Compel, *Zhou* Action, ECF No. 114) ECF No. 114-2 at 2-3.

9

3. [T]he claims asserted in the Delaware Action, which relate to, among other things, [Property Solutions'] de-SPAC transaction and the disclosures made in connection therewith, arguably could be deemed to meet the definition of "Released Plaintiffs' Claims."[40]

Counsel in the *Zhou* Action declined to amend the stipulation.[41]

Cleveland's counsel then filed a notice of appearance in the *Zhou* Action and sought discovery into the parties' settlement negotiations. When the parties objected, Cleveland moved to compel, telling the federal court that "[w]ithout a carve-out of all Delaware Action claims, the proposed settlement could arguably release Mr. Cleveland's well-supported claims" in Delaware.[42] The motion to compel was twice denied.[43]

### F.     Final Approval of the *Zhou* Settlement

On February 12, 2024, a motion for final approval of the settlement and for certification of the settlement class was filed in the *Zhou* Action.[44] Cleveland objected.[45] He maintained that the terms of the "Proposed Settlement purport[ed] to release from liability a wide swath of individuals" and "claims, including the claims

---

[40] *Id.*

[41] *Id.* at ECF No. 114-3 at 2.

[42] *Id.* at ECF No. 114 at 47-48.

[43] *Zhou* Action, ECF Nos. 118, 131.

[44] *Zhou* Action, ECF No. 120.

[45] Defs.' Ex. A (Final J. Order, *Zhou* Action, ECF No. 136) ("*Zhou* Final Order") 5.

10

Mr. Cleveland is litigating in the Delaware Action."[46] He insisted that the release was overbroad and asked that the court modify it.[47] The federal court "overrule[d] Cleveland's objection and f[ound] that the proposed release language wa[s] appropriate."[48]

On March 18, 2024, the federal court approved the proposed settlement and plan to allocate the settlement fund and certified the settlement class.[49]

### G.     Summary Judgment

Two months later, the defendants in this action filed a motion for summary judgment.[50] Cleveland opposed the motion. After briefing was complete, I heard argument on both the motions to dismiss and the motion for summary judgment on November 6, 2024.[51] The motions were taken under advisement.

## II.     ANALYSIS

The defendants seek summary judgment on two grounds. First, they assert that the *Zhou* Stipulation (and its releases) should be enforced against Cleveland and the class he purports to represent. Second, they argue that the doctrine of res judicata requires dismissal.

---

[46] *Zhou* Action, ECF No. 125 at 1.

[47] *Id.*

[48] *Zhou* Final Order 13.

[49] *See generally id.* at 13-18.

[50] Dkt. 125.

[51] Dkts. 143, 144.

11

When evaluating whether a settlement agreement extinguishes a given claim, Delaware courts apply the summary judgment standard.[52] Summary judgment is the last off-ramp to avoid "a useless trial where there is no genuine issue as to any material fact."[53] Under Court of Chancery Rule 56, summary judgment is granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[54] The court must draw all reasonable inferences in the light most favorable to the non-movant.[55]

I begin by considering whether the *Zhou* Stipulation is binding on and enforceable against Cleveland. Because that issue is dispositive, I need not address the parties' res judicata arguments. Summary judgment is granted in favor of the defendants.

---

[52] *See Sterling Prop. Hldgs. Inc. v. New Castle Cty.*, 2013 WL 1821594, at *9 n.109 (Del. Ch. Jan. 28, 2013) (stating that court should employ the summary judgment standard when evaluating the effect of settlement agreements on present claims based on a paper record); *Carter Farm, LLC v. New Castle Cty.*, 2014 WL 3555958, at *3 (Del. Ch. July 17, 2014) (recognizing that a defendant's motion to enforce a settlement agreement "is, in reality, a motion for summary judgment").

[53] *Seiden v. Kaneko*, 2017 WL 1093937, at *3 (Del. Ch. Mar. 22, 2017) (citation omitted), *aff'd sub nom*, 177 A.3d 69 (Del. 2017).

[54] Ct. Ch. R. 56(c).

[55] *See Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 241 (Del. 2009) ("The facts, and all reasonable inferences, must be considered in the light most favorable to the non-moving party.").

## A. Principles of Contract Interpretation

"Settlement Agreements are contracts and Delaware courts examine them under well-established law surrounding contract interpretation."[56]  When interpreting a release, "the intent of the parties as to its scope and effect are controlling, and the court will attempt to ascertain their intent from the overall language of the document."[57]  "[W]here the language of the release is clear and unambiguous, it will not lightly be set aside."[58]

The *Zhou* Stipulation is governed by California law.[59]  Like Delaware, California follows the objective theory of contracts, meaning that the court's interpretation is based on the written terms of the contract.[60]  Contractual language is given its plain and ordinary meaning, so long as it is clear, explicit, and does not

---

[56] *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010); *see also Crescent/Mach I P'rs, L.P. v. Dr. Pepper Bottling Co.*, 962 A.2d 205, 208 (Del. 2008) ("Delaware law favors settlements and treats them as binding contracts.").

[57] *Corp. Prop. Assocs. 6 v. Hallwood Gp. Inc.*, 817 A.2d 777, 779 (Del. 2003) (citation omitted).

[58] *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del. 1982).

[59] *Zhou* Stip. § 8.23.

[60] *See, e.g.*, *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (Cal. Ct. App. 2003) ("California recognizes the objective theory of contracts . . . under which 'it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation'" (quoting *Titan Gp., Inc. v. Sonoma Valley Cty. Sanitation Dist.*, 164 Cal. App. 3d 1122, 1127 (Cal. Ct. App. 1985))); *id.* at 955 ("When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible." (citing Cal. Civ. Code § 1639)).

13

give rise to an absurdity.[61]  The contract is read as a whole, giving effect to each part if reasonably practicable.[62]

## B.    Release of Parties

Cleveland and the putative class he seeks to represent are members of the *Zhou* Action settlement class.[63]  The *Zhou* Stipulation defines "Settlement Class" as:

> (a) all persons and entities who purchased or otherwise acquired Faraday securities between January 28, 2021 and April 14, 2022 . . . and/or (b) beneficially owned and/or held the Class A common stock of [Property Solutions] as of June 21, 2021 and were eligible to vote at [Property Solutions'] July 20, 2021 special meeting and were allegedly damaged thereby . . . .[64]

The class identified in Cleveland's Complaint—holders of Property Solutions stock from the January 28, 2021 merger announcement to its July 21, 2021 closing—is subsumed within the *Zhou* class.  In approving the settlement of the *Zhou* Action,

---

[61] *See People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 524-25 (2003) ("[W]here 'contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further.'" (quoting *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 53 (1997))); *see also Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal. App. 5th 506, 531 (2021) ("To interpret a contract, we look to its language . . . and ascertain the intent of the parties, if possible, based solely on the contract's written provisions . . . ." (citing Cal. Civ. Code §§ 1638-39)).

[62] *R.J. Reynolds Tobacco*, 107 Cal. App. 4th at 526 ("The language in a contract must be construed in the context of that instrument as a whole . . . .  [I]f possible, the court should give effect to every provision of the contract." (citation omitted)).

[63] *See Zhou* Action, ECF 125-1 at ¶ 4 (Cleveland: "I am a member of the settlement class in the above-captioned case.  During the class period of January 28, 2021 through April 14, 2022, I purchased 26 shares of common stock in [Property Solutions].").

[64] *Zhou* Stip. § 1.31; *see also Zhou* Final Order 6.

the federal court held that the settlement and the court's final order and judgment were binding on all settlement class members.[65]

To avoid this reality, Cleveland argues that members of his proposed class may fall outside the *Zhou* settlement class. He contends that his proposed class is broader than the one in the *Zhou* Action because it includes not only former Property Solutions stockholders but also their "successors and assigns."[66]

This is a meaningless distinction. The *Zhou* Stipulation states that all class members settled and released their claims on behalf of themselves "and each of their respective . . . successors [and] assigns."[67] A "successor" or "assign" of a former Property Solutions stockholder cannot logically have greater rights to challenge the merger than the original stockholder.[68] And even if there were "successors and

---

[65] *See Zhou* Final Order 17.

[66] *See* Pl.'s Answering Br. in Opp'n. to Defs.' Mot. for Summary J. and Mot. to Stay (Dkt. 133) ("Pl.'s Answering Br.") 17 (quoting Compl. ¶ 263).

[67] *Zhou* Stip. § 1.30; *see also id.* § 4.1 (stating that all class members settled and fully released their claims on behalf of themselves, "and their respective . . . successors, [and] assigns").

[68] *See Gatx/Airlog Co. v. Evergreen Int'l Airlines*, 2000 WL 36740992, at *18 (N.D. Cal. Aug. 11, 2000) ("Under California law, an assignor can assign no greater rights than it possesses. In other words, an assignee 'stands in the shoes' of the assignor, 'taking his rights and remedies subject to any right to offset or other defenses existing against the assignor prior to actual notice of the assignment.'" (citation omitted)); *see also Resort Point Custom Homes, LLC v. Tait*, 2010 WL 1443274, at *2 (Del. Super. Apr. 7, 2010) ("It is a rudimentary principle of contract law that the assignee takes the assigned claim subject to all defenses of the obligor against the assignor. That is to say that the assignee stands in the shoes of the assignor. He acquires no greater right than that which was possessed by his assignor.").

15

assigns" who fell outside the *Zhou* class, Cleveland cannot represent them because he is a *Zhou* class member.[69]

The defendants in this case are also "Released Defendant Parties," as defined in the *Zhou* Stipulation.[70] This definition necessarily applies to the defendants named in the *Zhou* Action: Faraday, Vogel, and Feldman. It also includes any "present and former . . . directors" of Property Solutions, *i.e.*, the remaining individual defendants in this suit: David Amsterdam, Avi Savar, and Eduardo Abush. The definition sweeps in the remaining defendants in this action because it extends to the company's "present and former parents . . . members, partners, principals . . . controlling shareholders, shareholders, attorneys, consultants, [and] advisors."[71]

## C. Release of Claims

The primary dispute presented is whether Cleveland's claims are released by the settlement of the *Zhou* Action.[72] The release includes "any and all claims," both

---

[69] *Cf. Lurenz v. Coca-Cola Co.*, 2024 WL 2943834, at *2 (S.D.N.Y. June 10, 2024) ("A named plaintiff cannot rely on the standing of unnamed potential class members." (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996))).

[70] *Zhou* Stip. § 1.27.

[71] *Id.* These defendants are Riverside, Deutsche Bank, Latham & Watkins, FF Top, and Property Solutions Sponsor. *See supra* note 26.

[72] The federal court held that, "to the extent the effect of the [r]elease language is relevant to any ongoing suit in the Delaware Court of Chancery," it "le[ft] interpretation of the Release language to the Delaware courts." *Zhou* Final Order 18.

16

"known claims and Unknown Claims,"[73] that "any member(s) of the Settlement Class asserted or could have asserted now or in the future in any forum that both":

> (i) arise out of, are based upon, or are related in any way to the allegations, transactions, facts, events . . . that were referred to or alleged, or that could have been referred to or alleged, in the [*Zhou*] Action, and (ii) relate in any way to the purchase or the ***acquisition*** of Faraday or [Property Solutions] common stock [by class members between January 28, 2021 and April 14, 2022].[74]

I consider these two clauses of the release in turn.

### 1. Factual Predicate Requirement

Cleveland's claims "arise out of" and "relate" to the allegations and transactions raised in the *Zhou* Action. The *Zhou* Action centers on Property Solutions' business combination with Legacy Faraday. Cleveland's claims are based on the same business combination. They assert harm from the same stockholder vote, the same proxy disclosures, and the same redemption rights provided by the same certificate of incorporation.

Cleveland nevertheless argues that his claims have "nothing to do" with the allegations in the *Zhou* Action.[75] He maintains that the *Zhou* Action involved

---

[73] "Unknown Claims" are defined, in relevant part, as "any and all Released Plaintiffs' Claims that Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties[.]" *Zhou* Stip. § 1.43.

[74] *Id.* § 1.26 (defining "Released Plaintiffs' Claims") (emphasis added).

[75] Pl.'s Answering Br. 24.

"misleading statements that . . . coaxed investors to purchase (*i.e.*, acquire) Faraday Future stock," but that this case is "based entirely on Defendants' statements and conduct leading up to and including the closing of the Merger that coaxed investors into retaining [Property Solutions] stock."[76]

Cleveland made that same argument in the *Zhou* Action, telling the federal court that the release "violate[d] the 'identical factual predicate' rule in purporting to release claims [he] is prosecuting in the Delaware Action that are based on facts not alleged in [the *Zhou* Action]."[77] The federal court rejected this argument.[78] It observed that "[t]he Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims 'based on the identical factual predicate as that underlying the claims in the settled action.'"[79]

Delaware law supports the same outcome. A release can encompass claims "not specifically asserted" in a settled class action, including claims that might not have been presentable, if they arise from the "same identical factual predicate or the same set of operative facts as the underlying action."[80] The release "can even extend

---

[76] *Id.*

[77] *Zhou* Final Order 11.

[78] *Id.* at 13.

[79] *Id.* (quoting *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018)).

[80] *In re Phila. Stock Exch., Inc.*, 945 A.2d 1123, 1146 (Del. 2008) (citation omitted).

to claims arising from that identical factual predicate that 'might not have even been presentable in the class action.'"[81]  This standard is often met where two lawsuits arise from and challenge the same transaction—even if distinct legal or factual theories are implicated.[82]  That is plainly the case here.

### 2.    Acquisition Requirement

Cleveland also insists that his claims fall outside the second clause of the release because he did not "acquire," and his claims do not concern an "acquisition" of, Faraday common stock.[83]  He maintains that his claims relate instead to the "conversion" of Property Solutions shares into Faraday shares through the de-SPAC.[84]  For support, he relies on the proxy, which stated that the closing of the

---

[81] *In re AMC Ent. Hldgs., Inc. S'holder Litig.*, 299 A.3d 501, 526 (Del. Ch. 2023) (quoting *Phila. Stock Exch.*, 945 A.2d at 1146); *see also Nottingham P'rs v. Dana*, 564 A.2d 1089, 1106 (Del. 1989) ("[I]n order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.").

[82] *E.g.*, *Nottingham*, 564 A.2d at 1105-07 & n.37 (holding that the same "factual predicate" rule was satisfied where the gravamen of both suits "was the nondisclosure of material facts in the Proxy Statement" and both suits attacked the same "transaction," proxy statement, and stockholder meeting); *In re Countrywide Corp. S'holders Litig.*, 2009 WL 2595739, at *6 (Del. Ch. Aug. 24, 2009) (approving a classwide settlement over an objection that it would release claims based on alleged statements that were not the basis for the allegations in the Court of Chancery complaint but that arose from the same transaction and operative facts), *aff'd sub nom. Ark. Tchr. Ret. Sys. v. Caiafa*, 996 A.2d 321 (Del. 2010).

[83] Pl.'s Answering Br. 17; *see* Compl. ¶ 1.

[84] Pl.'s Answering. Br. 21-23.

19

merger would cause "each outstanding share of [Property Solutions] common stock, by its terms, [to] automatically convert into one share of [Faraday] Class A common stock . . . ."[85]

Cleveland's creative distinction places unjustified weight on the difference between shares being acquired and shares being converted into other shares. As in Delaware, California courts use dictionaries to interpret the meaning of undefined contract terms.[86] Black's Law Dictionary defines "acquire" as "to gain possession or control of; to get or obtain by any means."[87] Even if the closing did not involve the cancellation of Property Solutions shares and issuance of new Faraday shares, Property Solutions' non-redeeming public stockholders "gained" Faraday shares by some "means."

The notion that these shares changed in name only rests on a fundamental misperception of the business combination. The shares of the combined company after a de-SPAC transaction are an "economically different security than the SPAC's

---

[85] Proxy 10, 80.

[86] Pl.'s Answering Br. 19 n.70.

[87] *Acquire*, Black's Law Dictionary (12th ed. 2024); *see Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract."); *Wasatch Prop. Mgmt. v. Degrate*, 35 Cal. 4th 1111, 1121-22 (Cal. 2005) ("When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word.").

shares."[88]  Before the merger, Cleveland and his putative class members owned shares in a blank check company.  After the merger, they held shares in an operating company that manufactures and sells electric vehicles.[89]

Further, by Cleveland's strained interpretation, even claims in the *Zhou* Action would not be released.  The *Zhou* Action involved claims under Section 14(a) on behalf of former Property Solutions stockholders who obtained Faraday stock after being allegedly "misled" about the merger and denied the opportunity to make an informed redemption decision.[90]  Those stockholders gained public Faraday shares in the same way as the group Cleveland seeks to represent.

*          *          *

The purpose of the *Zhou* Stipulation, as reflected in the plain language of its releases, is to achieve global peace.[91]  It would be absurd for Faraday and its insurers

---

[88] *Brown v. Matterport, Inc.*, 2024 WL 2745822, at *13 (Del. Ch. May 28, 2024) (citation omitted); *see also Felipe v. Playstudios Inc.*, 2024 WL 1380802, at *7 (D. Nev. Mar. 31, 2024) (concluding that a plaintiff had standing under the Exchange Act because he "acquired" securities when the SPAC's stock was converted though a merger (citing *Hildes v. Arthur Andersen LLP*, 734 F.3d 854 (9th Cir. 2013)).

[89] At oral argument, Cleveland's counsel compared the treatment of Property Solutions shares at closing to painting a car a different color.  Dkt. 144 (Trans. of Nov. 6. 2024 Oral Arg.) 25-26 ("If I own a blue car and I paint it red, I would not say . . . that I acquired a red car.").  But, as the company's counsel explained in continuing the analogy, a different "vehicle" entirely was obtained.  *Id.* at 43 (observing that "it's not just putting paint on a car" but obtaining "an airplane . . . [s]omething very different").

[90] *Zhou* Compl. ¶¶ 207-08, 214-15.

[91] *See, e.g.*, *In re Celera Corp. S'holder Litig.*, 59 A.3d 418, 433 (Del. 2012) ("Settlement agreements 'almost invariably'. . . release all liability claims associated with the challenged transaction 'to the broadest extent allowable under law.'  Such broad release provisions are

21

to agree to pay $7.5 million to a stockholder class while facing serial litigation on nuanced theories challenging the same events by the same class members in another court.

The plain language of the *Zhou* Stipulation binds Cleveland. It unambiguously precludes further prosecution of this action. Cleveland's efforts to manufacture a loophole to avoid enforcement are meritless.[92]

## III. CONCLUSION

Cleveland's claims are barred by the *Zhou* Stipulation, as approved by the federal court. The defendants' motion for summary judgment is granted. The Complaint is dismissed with prejudice. The motions to dismiss are moot.

---

intended to accord the defendants 'global peace.'" (citation omitted)); *Boothe v. Baker Indus., Inc.*, 262 F. Supp. 168, 174 (D. Del. 1966) (finding it "inconceivable" that a defendant would have "surrendered" rights in a state settlement unless plaintiffs "were barred once and for all from relitigating the transactions").

[92] *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007) (explaining that a party cannot "manufacture an ambiguity" permitting it to introduce extrinsic evidence where the contract "facially has only one reasonable meaning").